UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBBIE GENE WATSON, JR., | No. 2:17-cv-0726 KJM KJN P |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| JOEL MARTINEZ, WARDEN, | |
| Respondent. | |

I. Introduction

Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his January 23, 2015 conviction for torture. Petitioner was sentenced to 19 years-to-life in state prison. Petitioner claims (1) the definition of torture found in California Penal Code § 206 is unconstitutionally vague and (2) there is insufficient evidence to support a conviction for torture. After careful review of the record, this court concludes that the petition should be denied.

II. Procedural History

On October 29, 2014, a jury found petitioner guilty of torture, assault with a deadly weapon, spousal abuse with a prior conviction, intimidating a witness by force or fear, child abuse/neglect/endangerment, criminal threats, assault by force likely to produce great bodily injury, and false imprisonment by force or violence. On January 23, 2015, petitioner was

sentenced to 19 years-to-life in state prison. (ECF No. 1 at 6.)

Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District. The Court of Appeal affirmed the conviction on May 10, 2016. (ECF No. 1 at 7.)

Petitioner filed a petition for review in the California Supreme Court, which was denied on August 10, 2016. (ECF No. 1 at 7.)

III. Factual Background[1]

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendant, his wife, and their two children lived together in a house in Marysville. On Friday, January 10, 2014, defendant was in the living room talking on the cordless phone with his mother about a visit to his lawyer about a prior incident of domestic violence his wife had reported for which he had a court appearance on Monday. Defendant, who was drunk, was "yelling ... about what had happened at the lawyer's office." Defendant told his mother, "if we didn't fix this, that he was going to kill us."
> 
> Defendant hung up the phone and threw it at his wife's chest. He then grabbed her by the throat, but he let go when his wife hit him over the head with an ashtray. She ran into the kitchen. Defendant followed her and punched her in the face four or five times, and when she fell to the ground, he told her not to get up. She tried to get up, so defendant shoved her into the refrigerator and, taking hold of her hair, slammed her head into the floor. She grabbed a spatula and hit defendant, causing him to let go of her momentarily and call his mother. Defendant got hold of his wife again and told his mother he was "going to kill us." His wife begged in the background for his mother to call the police.
> 
> The children started screaming in their bedroom, so defendant let go of his wife, and she went to calm them down. His wife started rocking their two-year-old daughter in her arms, and then defendant came inside the bedroom and hit his wife on the head, knocking her on to the bed. She grabbed the phone and called 911, but defendant hung up the phone and continued to punch his wife in the face. Defendant momentarily stopped when his friend got to the house and grabbed defendant's arm. Defendant told his friend that his wife had already called police. Defendant then started beating his wife again telling her, "'You're dead.'"

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Watson, No. CRF1420 (May 10, 2016), a copy of which was lodged by respondent as ECF No. 13 on July 20, 2017.

2

> Defendant's friend took the daughter away, and defendant went outside to the front porch. His wife locked the front door. Defendant kicked in the door and came inside with a posthole digger. His wife knocked it loose from his hands, but then defendant grabbed her and threw her to the ground on the front porch and started hitting her with the posthole digger. Defendant then grabbed an aluminum pole, held it like a bat, and hit her many times with it in the head and eyes. He stopped and ran into the house when police arrived. Police arrested defendant and took him into custody.
>
> While in jail, defendant wrote his wife an eight-page letter that a friend hand-delivered to the house. In the letter, defendant wrote the following: "Please find it in your heart to forgive me and give me one last chance." "I'm ready to do what[ ]ever it takes to spend my life with you baby." "I said it baby no matter how bad things got we told each other that we would never leave each other that we could always be together...." "What I'm asking is give me some time to fi[ght] this...." "What I'm trying to say is that I think we should work past this we should learn f[ro]m this ... and put all of [our] past in the past and look to the future...." "I know that I have hurt you really bad this time, but baby you have hurt me to[o] ... we have hurt each other for qui[te] some time. I do things you don't like and you do things I don't like...." "Baby please just one last chance I will make this right."
>
> His wife's take on the letter was that he was asking her "[t]o forgive him and start over, give him another chance," "[s]ame things that he had told [her] in the past after all these other incidents...." This was "his way of trying to stop [her] from coming here," i.e., to court. In these other incidents, he would "beg [her] to give him another chance, tell [her] that it wasn't all his fault, it was [hers] too. He told [her she] needed to fix it."

People v. Watson, No. C078754, 2016 WL 2765094, *1-2 (Cal. Ct. App. 2016).

IV. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. Wilson v. Corcoran, 562 U.S. 1, 4 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State

court proceedings unless the adjudication of the claim -

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] Lockyer v.

---
[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be

4

Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Richter, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of

---

overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

5

the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, (2013) (citing Richter, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 101. The petitioner bears "the burden to demonstrate

that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

V. Discussion

A. Claim 1: The Definition of Torture is Allegedly Unconstitutionally Vague

Petitioner argues that the California Court of Appeal did not properly evaluate his first claim by failing to adjudicate the second portion of the claim: whether Section 206 is so vague that it allows for arbitrary enforcement such that any assaultive conduct could be considered torture. Petitioner contends that the California Court of Appeal only addressed the plain meaning of the words in California Penal Code § 206 (hereafter referred to as Section 206) and overlooked petitioner's actual claim. Further, petitioner argues he is entitled to de novo review because the state court's decision failed to adjudicate petitioner's full original claim.

Petitioner urges that upon de novo review the court should find Section 206 is void-for-vagueness based on the Supreme Court's decisions in Kolender and Johnson v. United States. Kolender v. Lawson, 461 U.S. 352, 357 (1983); Johnson, 135 S. Ct. 2551 (2015). Petitioner compares Section 206 to the residual clause's arbitrary enforcement because Section 206 "does not draw a line as to when a normal assault manifests such an intent" required in Section 206 to cause extreme or cruel pain. (ECF No. 1 at 14.) Petitioner contends that Section 206 is void-for-vagueness because "the language provides no meaningful guidance and instead promotes arbitrary findings by the jury." (ECF No. 1 at 22.) According to petitioner Section 206 "is so shapeless that it encourages arbitrary and discriminatory enforcement." (Id. at 23.)

Under California law the crime of torture is defined in Section 206 as: "every person who, with the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose, inflicts great bodily injury as defined in Section 12022.7 upon the person of another, is guilty of torture." Cal. Penal Code § 206 (West).

7

*Legal Standard for the Void-for-Vagueness Doctrine*

A criminal statute is void-for-vagueness if it fails to provide adequate notice to ordinary people of the kind of conduct prohibited and if it authorizes arbitrary and discriminatory enforcement. Kolender, 461 U.S. at 357. To satisfy due process, "a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." Skilling v. United States, 561 U.S. 358, 402-3 (2010) (quoting Kolender, 461 U.S. at 357); see also City of Chicago v. Morales, 527 U.S. 41, 58 (1999) (plurality) ("the purpose of the fair notice requirement is to enable the ordinary citizen to conform his or her conduct to the law").

Vagueness objections under the Due Process Clause "rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know their conduct is at risk." Bradway v. Cate, 588 F.3d 990, 992 (9th Cir. 2009) (quoting Maynard v. Cartwright, 486 U.S. 356, 361 (1988)). In assessing whether a state statute is unconstitutionally vague, federal courts must consider state courts' constructions of the challenged statute. Kolender, 461 U.S. at 355; see also United States v. Lanier, 520 U.S. 259, 266 (1997) (noting that judicial opinions may clarify "an otherwise uncertain statute"). Federal courts must accept a narrow construction to uphold the constitutionality of a state statute if the statute's language is readily susceptible to it. Nunez by Nunez v. City of San Diego, 114 F.3d 935, 942 (9th Cir. 1997). For vagueness challenges to statutes which do not involve First Amendment freedoms, a court should examine the statute "in the light of the facts of the case at hand." United States v. Powell, 423 U.S. 87, 92 (1975).

*California Court of Appeal Analysis*

On direct appeal, the California Court of Appeal for the Third Appellate District rejected the claim that Section 206 is void-for-vagueness as follows:

> A defendant is guilty of torture if he inflicts great bodily injury upon the person of another "with the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose." (Pen. Code, § 206.) Defendant contends the

8

definition of torture in our Penal Code is unconstitutionally vague, based on Johnson v. United States (2015) 576 U.S. —— [192 L.Ed.2d 569] (Johnson).

In Johnson, the Court held that the residual clause of a federal recidivist statute, which defined a violent felony prior conviction as one that "'otherwise involves conduct that presents a serious potential risk of physical injury to another'" was unconstitutionally vague for two reasons. (Johnson, supra, 576 U.S. at p. —— [192 L.Ed.2d at pp. 576–578].) One, "the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime." (Id. at p. —— [192 L.Ed.2d at p. 578].) Two, "the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony." (Id. at p. —— [192 L.Ed.2d at p. 579].) Specifically, the residual clause "requires application of the 'serious potential risk' standard to an idealized ordinary case of the crime" and "this abstract inquiry offers significantly less predictability than one '[t]hat deals with the actual, not with an imaginary condition other than the facts.'" (Id. at p. —— [192 L.Ed.2d at p. 583].)

In contrast, California's torture statute does not suffer from the same problems as the residual clause in Johnson because each of the terms used in the torture statute has an established, readily understood meaning. We explain below.

As to the phrase "cruel or extreme pain and suffering" "[i]n [Penal Code] section 206, the word 'cruel' modifies the phrase 'pain and suffering.' In at least two other cases, courts have held that 'cruel pain' is the equivalent to 'extreme' or 'severe' pain. [Citations.] This definition comports with the common dictionary definition of 'cruel' (see Webster's New Internet. Dict. (3d ed. 1965) p. 546 [as an adjective, 'cruel' means 'extreme' or 'severe'])." (People v. Aguilar (1997) 58 Cal.App.4th 1196, 1202, fn. omitted.)

And as to the phrase, "for the purpose of revenge, extortion, persuasion, or for any sadistic purpose," we reject defendant's vagueness challenges to these terms as well. Defendant contends, "[h]ow can jurors rationally decide the purpose of the assaultive conduct where the possible 'purposes' of 'revenge,' 'extortion,' 'persuasion' or 'sadism' appear so broad that they could encompass virtually any assaultive conduct?" But they do not encompass virtually any assaultive conduct. As to "sadistic purpose," the California Supreme Court has held it is "a term in common usage, having a relatively precise meaning, that is, the infliction of pain on another person for the purpose of experiencing pleasure." (People v. Raley (1992) 2 Cal.4th 870, 901.) As to the remaining terms, the crime of torture focuses on the perpetrator's mental state and not the assaultive conduct itself. (People v. Hale (1999) 75 Cal.App.4th 94,

9

> 108.) "In this respect, revenge, extortion, and persuasion are self-explanatory." (People v. Massie (2006) 142 Cal.App.4th 365, 371.)
>
> In contrast, the problem in Johnson is that the residual clause gave no real guidance on how to determine what qualifies as serious potential risk of physical injury to another. That is, what level of risk qualifies as "serious," and how do we determine whether a crime poses such a risk? No such problem arises with the terms in Penal Code section 206, which are all commonly understood as described above. Thus, the torture statute is not void-for-vagueness in violation of Johnson.

Watson, 2016 WL 2765094 at *2-3.

*Analysis*

Petitioner argues that Section 206 is void-for-vagueness because its terms lack minimal guidelines for enforcement and encourage arbitrary application. Petitioner further argues that the state court failed to address the intent portion of Section 206. Petitioner contends that the evidence did not reasonably support the conclusion that Petitioner had the intent to inflict cruel or extreme pain and suffering. (ECF No. 1 at 43; ECF No. 15 at 7.) Instead, petitioner argues that this was merely an assaultive attack and did not rise to the level necessary to meet the intent prong of Section 206. (ECF No. 1 at 46.) Petitioner also claims he is entitled to a de novo review of his void-for-vagueness claim because the state court failed to address one of the prongs of his initial claim. (ECF No. 1 at 43.)

In the state court decision, the California Court of Appeal found the vagueness doctrine only applies when no real guidance is given as to the application and determination of what is being defined. Watson, 2016 WL 2765094 at *2-3. The California Court of Appeal determined that is not the case with Section 206, and clearly provided the plain definition for each term used in the statute. This court agrees with the state court that each of the terms in Section 206 is commonly used and understood. However, the state court failed to address the arbitrary enforcement prong; accordingly, such component must be addressed de novo. Wiggins, 539 U.S. at 534.

////

California courts have rejected void-for-vagueness challenges to Section 206. People v. Misa, 140 Cal. App. 4th 837, 844; 44 Cal. Rptr. 3d 805, 810 (2006) (collecting cases). In Misa, the California Court of Appeal rejected the same void-for-vagueness challenge to Section 206 that petitioner asserts in this action. Id. The state court confirmed that an ordinary person can understand what conduct is prohibited by Section 206. Id. at 844. In light of California courts' interpretation of Section 206, the undersigned cannot find the state court's rejection was unreasonable.

Furthermore, in an unpublished opinion, the Ninth Circuit addressed a void-for-vagueness challenge to Section 206 where a prisoner claimed Section 206 was "unconstitutionally vague because it fail[ed] to prescribe a uniform and consistent standard for determining guilt and it is indistinguishable from the crime of battery with great bodily injury." Jenkins v. Hill, 163 F.3d 606, *1 (9th Cir. 1998).[3] Like the state court, the Ninth Circuit determined that the "contentions lack merit because an ordinary person would understand what conduct was prohibited by California's torture statute." Id. However, the Ninth Circuit also addressed the intent portion, finding the difference between torture and battery with great bodily injury lies with the intent. Id. "The intent needed for torture is not required for battery with great bodily injury." Id.

Here, petitioner's claim that all assaultive conduct is prone to arbitrary and discriminatory enforcement under Section 206 is similar to the claim made in Jenkins and is thus unavailing. Petitioner argues that Section 206 "provides no bright line rule of separation between ordinary assault and torture." (ECF No. 1 at 42.) However, petitioner's claim is invalid because assaultive conduct is distinguishable from torture due to a corresponding higher threshold of intent. Jenkins, 163 F.3d at *1. "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal. Penal Code § 240 (West). Assaultive conduct requires an attempt and an ability, but intent to commit violent injury is not a required element as it is with Section 206. Therefore, Section 206 is not susceptible to arbitrary or discriminatory enforcement in which every assault could be deemed torture because assault

---

[3] The Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

convictions do not require *intent*, while Section 206 requires the *intent* to commit extreme pain or suffering.

In addition to requiring a specific intent to cause cruel or extreme pain, Section 206 imposes a further hurdle to reduce arbitrary enforcement, requiring that the intent be for one of four precise reasons: revenge, extortion, persuasion, or sadistic purpose. (Reporter's Transcript ("RT") at 489.) The specific reasons for inflicting the cruel or extreme pain and suffering are clearly laid out in the statute. The language of Section 206 creates a double-pronged hurdle which must be proven beyond a reasonable doubt for a person to be convicted of torture, diminishing the possibility of arbitrary or discriminatory enforcement. The two-pronged approach requires both intent and specific reasons, making it so that—as the court in Misa previously determined—a reasonable person could understand the conduct which rises to the level of torture.

As correctly stated by the California Court of Appeal, petitioner was found guilty of torture based on the theory that he beat his wife for revenge because she reported an earlier instance of domestic violence for which petitioner was facing a substantial prison sentence. Accordingly, the state court's decision was not an unreasonable application of clearly established federal law.

B. Claim 2: Alleged Insufficient Evidence to Support Conviction for Torture

Petitioner claims that there is insufficient evidence to support a conviction for torture. Petitioner argues the state court's rejection of his claim was "objectively unreasonable" because it failed to determine whether the evidence established every element necessary to prove Section 206 in the light most favorable to the prosecution, instead deferring to the prosecutor's argument. (ECF No. 1 at 47; 15 at 6-7.) Petitioner insists such deference misapplied both Jackson and Winship by failing to independently review the evidence and thus requires this court's independent review. (Id.); Jackson v. Virginia, 443 U.S. 307 (1979); Winship, 397 U.S. at 364. Petitioner also contends that no reasonable fact finder could prove all of the elements of Section 206 were met inasmuch as his conduct was an assaultive attack rather than torture because there was insufficient evidence to prove an intent to inflict cruel or extreme pain and suffering. (Id. at

7.)

*Legal Standard for Claim Alleging Insufficient Evidence*

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). Thus, a state prisoner who alleges the evidence introduced at trial was insufficient to support the jury's findings states a cognizable federal habeas claim. Herrera v. Collins, 506 U.S. 390, 401–02 (1993). The prisoner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). On direct review, a state court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. Federal habeas relief is available only if the state court determination that the evidence was sufficient to support a conviction was an "objectively unreasonable" application of Jackson. Juan H., 408 F.3d at 1275 n.13. The duty of the federal habeas corpus courts is to make sure that constitutional error did not occur. Jackson, 443 U.S. at 323.

As noted by the Supreme Court, habeas claims based upon alleged insufficient evidence "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam).

First, on direct appeal "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, 565 U.S. 1, 2 (2011). When determining the sufficiency of the evidence, a reviewing court makes no determination of the facts in the ordinary sense of resolving factual disputes. Sarausad v. Porter, 479 F.3d 671, 678 (9th Cir. 2007), vacated in part, 503 F.3d 822 (9th Cir. 2007), rev'd on other grounds, 555 U.S. 179 (2009). Rather, the reviewing court "must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict." Walters v.

13

Maass, 45 F.3d 1355, 1358 (9th Cir. 1995); see also Jackson, 443 U.S. at 319, 324, 326.

Second, on habeas review, in cases where a state court has issued a reasoned decision rejecting a claim of insufficient evidence under a standard that is not "contrary to" Jackson, a reviewing federal court applies an additional layer of deference. Juan H., 408 F.3d at 1274. "A federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Id. at 1275.

In adjudicating an insufficiency of the evidence claim a federal habeas court "look[s] to [state] law only to establish the elements of [the crime] and then turn[s] to the federal question of whether the [state court] was objectively unreasonable in concluding that sufficient evidence supported [the conviction]." Juan H., 408 F.3d at 1278 n.14. In determining whether the evidence was sufficient, a federal court must follow the California courts' interpretation of state law. Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

The Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16. In performing a Jackson analysis, a jury's credibility determinations are "entitled to near-total deference." Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004). When the factual record supports conflicting inferences, the federal court must presume that the trier of fact resolved the conflicts in favor of the prosecution and must defer to that resolution. Jackson, 443 U.S. at 326.

*California Court of Appeal Analysis*

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> Defendant contends the People presented insufficient evidence he was guilty of torture because "[t]he evidence here demonstrated a violent, prolonged and thoughtless assault. But the evidence simply did not permit a rational juror to conclude beyond a reasonable doubt that the prosecution proved a forbidden purpose behind acts which had no purpose." Defendant is wrong because there was sufficient evidence that defendant's prolonged beating of his wife was

14

> motivated by "the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose." (Pen. Code, § 206, italics added.)
>
> Here, the prosecutor argued and the evidence showed that the purpose of the beating was revenge. Specifically, the wife had reported to police a previous instance of domestic abuse for which defendant had a court appearance on Monday and for which he had gone to see his attorney earlier in the day. Just before he threw the phone at his wife, defendant had been on the telephone with his mother "yelling ... about what had happened at the lawyer's office." He said, "if we didn't fix this, that he was going to kill us." From this evidence, the prosecutor argued that with the prolonged beating, defendant "intend[ed] to cause cruel or extreme pain and suffering for the purpose of revenge." The prosecutor then explained that "this whole thing started as a result of a phone conversation he had regarding him having to come to court on Monday for thumping her before.... And he is upset with having to go to that court. He throws the phone at her ... [¶] ... [¶] and then the beat down starts." This evidence was sufficient to establish the ensuing prolonged beating was revenge for the wife's reporting an earlier incident of domestic violence.

Watson, 2016 WL 2765094 at *3.

*Analysis*

As correctly stated by the California Court of Appeal, petitioner was found guilty of torture based on the theory that his actions were sufficient to prove the intent to inflict cruel or extreme pain and suffering. Watson, 2016 WL 2765094 at *2. The state court's opinion demonstrates that the jury was presented with sufficient evidence from which it could reasonably infer that petitioner had the intent to inflict cruel or extreme pain and suffering. For the reasons stated herein, the undersigned finds that the state court's finding of sufficient evidence to support petitioner's torture conviction was not an unreasonable application of clearly established Supreme Court authority.

Torture is defined as: "every person who, with the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose, inflicts great bodily injury as defined in Section 12022.7 upon the person of another, is guilty of torture." Cal. Penal Code § 206 (West).

As explained above, federal habeas courts may only overturn the state court decision when the decision is "objectively unreasonable." Juan H., 408 F.3d at 1278 n.14. This court gives deference to state court findings of fact and presumes them to be correct; petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see also Summer v. Mata, 449 U.S. 539, 550 (1981) (holding in part that findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). Here, rather than providing such evidence, petitioner argues that the state court's reliance on the prosecution's argument renders the ruling "objectively unreasonable" because it does not show an independent review of the entire record. (ECF No. 1 at 47.)

In its decision, the state appellate court quoted and used language from the prosecution's argument, yet there is no language indicating that the state court did not review the record in its entirety prior to arriving at its decision. The state court in addressing the sufficiency of the evidence claim found that the prosecution's argument and "the evidence showed that the purpose of the beating was revenge." Watson, 2016 WL 2765094 at *3. Such findings demonstrate the court had a full understanding of all the evidence and found that there was sufficient evidence for a jury to conclude petitioner had the intent to inflict cruel or extreme pain and suffering on the victim.

Petitioner has failed to establish by clear and convincing evidence that the California Court of Appeals did not review the record in its entirety. Even if the state court relied only on the prosecution's argument, so long as the prosecutor's argument was supported by the evidence, there is insufficient grounds for this court to determine the decision was "objectively unreasonable." Juan H., 408 F.3d at 1278 n.14. For these reasons, the undersigned finds that the denial of this claim by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority. Accordingly, this claim should be denied.

However, even if this court performs an independent review of the record as petitioner requests, there is sufficient evidence to support the jury's verdict. The victim's testimony, petitioner's own testimony, and his mother's testimony all demonstrate that petitioner

had the intent to inflict cruel or extreme pain and suffering. (RT at 58; 217; 248; 263.)[4]

First, the jury heard evidence that the petitioner threatened to kill both the victim and his mother if they did not "fix this" (referring to the previous domestic violence charge for which the defendant was about to be sentenced). (RT at 62.) Sylvia Watson, the victim and petitioner's wife, testified that petitioner became angry while on the phone with his mother, resulting in petitioner throwing his phone at the victim's chest. (RT at 63-64.)

As the argument progressed for approximately five to seven minutes, it escalated from verbal to physical. (RT at 271.) Petitioner grabbed the victim by her throat, choking her until she could not breathe. (RT at 65-66.) Once petitioner let go of the victim's throat, he punched the victim in the face, shoved her into the fridge, and slammed her head into the floor, pushing the victim to the ground and telling her not to get up. (RT at 67-68; 275.) The victim testified that she felt threatened, scared, and the need to defend herself. (RT at 70.)

Petitioner continued his assault on the victim by threatening to kill her. (RT at 72.) At this point the victim believed the petitioner might kill her. (Id.) When the victim heard her children crying, she went to check on them. (RT at 73.) Petitioner initially let the victim go check on the children, but followed the victim into the bedroom. (Id.) While the victim was holding their child, petitioner began to hit the victim in the head in an attempt to stop the victim from calling 911 and reporting the attack. (RT at 74.) The victim was successful in calling 911 which increased petitioner's anger and his attack intensified. (RT at 76-77.)

Petitioner called his mother. Petitioner's mother called petitioner's friend Lawrence to help break up the attack because petitioner's mother was afraid to go to the house herself. (RT at 260.) In the meantime, petitioner punched the victim numerous times until Lawrence arrived.

---

[4] Petitioner cites People v. Tubby 34 Cal. 2d 72 (1949) in support of his claim. Petitioner argues that this case mirrors Tubby, where the California Supreme Court invalidated a torture conviction based on an alcohol induced rage. (ECF No. 1 at 46.) Petitioner insists his assault on the victim was "motivated by animal fury that was fueled by alcohol consumption" which "do[es] not rise to the level of torture." Id. However, the facts of Tubby are distinguishable from this case for several reasons, most notably Tubby involved an incident which took place over just a few minutes. Here, petitioner continually attacked his wife over an extended period, using multiple weapons.

17

(RT at 78.) When Lawrence arrived, Lawrence removed the children from the room. (RT at 78.) Petitioner went outside after telling the victim "you're dead." (RT at 79.) The victim locked the door to protect herself, but petitioner was not done. (Id.) Petitioner kicked in the door and appeared with a post-hole digger with which he began to beat the victim. (RT at 80.) The victim fought back and both petitioner and the victim ended up on the porch. (Id.) The victim knocked the post-hole digger out of petitioner's hand, but petitioner threw the victim to the ground and began to hit her with a metal pipe. (RT at 81.) Petitioner held the metal pipe like a baseball bat and repeatedly swung it at the victim making contact with the victim's body "numerous times." (RT at 82-83.)

Petitioner only ceased his attack when the Sheriff's officers arrived on the scene. (RT at 108.) Throughout the duration of the attack petitioner continually told the victim that he was going to kill her. (RT at 83.) This attack resulted in a visit to the emergency room, sixteen stiches on the victim's head, and treatment for numerous bruises on her leg, back, arms, head, and neck. (RT at 88-92.)

Even without an explicit statement of intent, the evidence presented demonstrates that after the initial altercation petitioner continued to assault the victim over a prolonged period, causing more pain as he continued. (RT at 62-81.) Petitioner's increasing threats and conduct of escalating violence are sufficient evidence of petitioner's intent to inflict cruel and extreme pain. From this evidence—taken from the transcript as a whole—the jury could reasonably infer petitioner attempted to inflict cruel or extreme pain upon his wife as revenge for her reporting the earlier incident of domestic violence.

For the reasons discussed above, the undersigned finds that the denial of this claim by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority. This claim should be denied.

VI. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge

18

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 13, 2018

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/ar/Wats0726.157